UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOUTHRIDGE PARTNERS II LIMITED PARTNERSHIP,<br>   *Plaintiff*,<br><br>   *v.*<br><br>POTNETWORK HOLDINGS, INC., SND AUTO GROUP INC, POTNETWORK HOLDING INC, SIGN N DRIVE AUTO MALL INC, CHARLES VACARRO, SECURITIES COUNSELORS, INC., RANDALL GOULDING, RICHARD GOULDING, GARY L. BLUM,<br>   *Defendants.* | 3:17-cv-1925 (KAD)<br><br><br><br><br><br><br><br><br><br>May 24, 2019 |

**MEMORANDUM OF DECISION RE:**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 41)**

Kari A. Dooley, United States District Judge

This action arises out of the Plaintiff Southridge Partners II Limited Partnership's ("Southridge") purchase of a portion of a certain Promissory Note, held by Defendant Sign N Drive Auto Mall, Inc. ("SND"), and reflecting a debt owed by Defendant PotNetwork Holdings, Inc. ("PotNetwork"). Southridge claims, *inter alia*, that PotNetwork breached its obligations under the terms of the Note and the Stock Transfer Agreement by which Southridge purchased its share of the Note. By motion for summary judgment, Southridge seeks judgment on Count One (Specific Performance) and Count Three (Breach of Contract). In response, and by way of its own motion for summary judgement (ECF 51), PotNetwork asserts that this Court lacks personal jurisdiction over PotNetwork. Alternatively, PotNetwork opposes the motion on the merits.[1]

---

[1] In their opposition to the Motion for Summary Judgment and by way of their own motion for summary judgment (ECF No. 51), Defendants other than SND and PotNetwork also challenge, *inter alia,* the Court's exercise of personal jurisdiction over them. In the normal course, such an issue would be decided in advance of any substantive dispositive motion. However, the motion for summary judgment relates only to Counts One and Three, which allege a breach of

1

**Standard of Review**

It is well settled that a party is entitled to summary judgment if "there is no genuine dispute as to any material fact and that [the party] is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323; *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once a movant has met this burden, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotations omitted). In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). "[C]ourts may not make credibility determinations or weigh the evidence when confronted with a motion for summary judgment. All evidence presented by the nonmoving party

---

contract by PotNetwork Holdings, Inc. and seeks an order of specific performance. The motion does not implicate the other Defendants who challenge personal jurisdiction in this District. Alternatively, the remaining Defendants raise several substantive bases upon which the claims should be dismissed if this Court determines that these Defendants are subject to the personal jurisdiction of the Court. All of these issues will be addressed by a separate memorandum of decision.

must be taken as true, and all inferences must be construed in a light most favorable to the nonmoving party." *Catanzaro v. Weiden*, 140 F.3d 91, 93–94 (2d Cir. 1998), *on reh'g*, 188 F.3d 56 (2d Cir. 1999) (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)). In sum, "where the facts specifically averred by [the nonmovant] contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

**Facts**

The facts giving rise to the instant claims are largely agreed upon.

On June 2, 2014, Sunrise Auto Mall Inc. ("Sunrise"), as maker, entered into a Convertible Promissory Note ("Note 1") with David Grey, as holder, in the principal amount of $1,850,000. Sunrise is a wholly owned subsidiary of PotNetwork. Pursuant to the terms of Note 1, the holder had the right to convert all or any portion of the outstanding unpaid principal into fully paid and non-assessable shares of Sunrise as maker. The stock price for such a conversion was determined by a formula set forth in Note 1.

On July 1, 2015, Grey (the holder of Note 1) as seller, and SND, as buyer, together with Sunrise, entered into a written Assignment of Note Agreement, pursuant to which Grey transferred and assigned his entire interest in Note 1 to SND. As consideration for Grey's interest in Note 1, SND gave Grey, *inter alia,* a promissory note payable to Grey in the amount of $250,000.

Also on July 1, 2015, PotNetwork assumed the obligations of Sunrise under Note 1 to SND. As a result, PotNetwork, as maker, entered into a Convertible Promissory Note ("Note 2") with SND, as the holder, in the original principal amount of $1,850,000. The date of Note 2 expressly tacked back to June 2, 2014, the date of Note 1. Note 2 contained the same terms and conditions as Note 1.

3

On July 18, 2016, SND sold and transferred to Southridge its interest in $25,000 of principal of Note 2, pursuant to a written Securities Transfer Agreement ("the STA"). The transfer included the creditor's right to convert debt to common stock. The STA contained a different formula by which debt would be converted to stock than was contained in Note 2. PotNetwork, as maker of Note 2, was a signatory to the STA. Under the STA, PotNetwork was obligated to issue a new note to replace Note 2 (the "replacement note") which would mirror the terms of Note 2 but which would include the debt for stock conversion formula reflected in the STA. The STA also obligated SND, at the closing, to issue a new note (the "Purchased Note") in favor of Southridge reflecting its $25,000 interest in Note 2. Pursuant to the STA, PotNetwork agreed to treat Southridge as a party to Note 2 with all the rights of, in place and stead, of SND. Accordingly, PotNetwork instructed its transfer agent to reserve at least 3,000,000 shares of PotNetwork's Common Stock for issuance to Southridge upon Southridge's exercise of its debt conversion rights.

The STA also obligated SND to deliver to Southridge Note 2, duly endorsed to Southridge. Notwithstanding the provisions of the STA, SND did not deliver to Southridge Note 2, duly endorsed to Southridge. SND did not issue the Purchase Note at closing as required under the STA. Nor did PotNetwork issue the replacement note as contemplated under the STA.

The STA included a forum selection clause identifying Connecticut as the forum in which to bring claims arising under the STA. PotNetwork was a limited signatory to the STA.

On July 25, 2016, Southridge issued a Notice of Conversion to PotNetwork by which it exercised its right to convert $3,300 of debt under Note 2 (principal only) into 3,882,353 shares of Pot Network common stock (the "First Conversion Notice"). Southridge calculated the number of shares owed by using the conversion formula contained in the STA. Upon receiving the First

4

Conversion Notice, PotNetwork issued 3,882,353 shares of PotNetwork Common Stock to Southridge.

Following the conversion, the remaining principal of Southridge's interest in Note 2 was $22,500.[2] On January 30, 2017, Southridge issued a second notice of conversion to PotNetwork, pursuant to which Southridge sought to convert both principal ($1,000) and interest ($3,161.64) due under Note 2 into 2,972,600 shares of PotNetwork Common Stock (the "Second Conversion Notice").

PotNetwork did not honor the Second Conversion Notice because of several perceived deficiencies with the Second Conversion Notice. First, PotNetwork claimed that the conversion would have violated an SEC prohibition against Southridge acquiring more than 4.99 percent of the outstanding shares of PotNetwork's common stock. Ultimately, Southridge recognized this deficiency, agreeing with PotNetwork. PotNetwork also objected to use of the conversion formula contained in the STA rather than the conversion formula contained in Note 2.

On April 24, 2017, Southridge sent what purported to be an amended Conversion Notice which addressed and cured the percentage cap prohibition violated in the Second Conversion Notice. The April amendment calculated the conversion using the STA conversion formula and based the calculation on the January stock price. PotNetwork did not honor this April letter because it was an unreasonable and untimely "amendment" to the January Second Conversion Notice; it used the wrong stock prices for calculating the conversion; and it used the wrong formula for calculating the conversion.

---

[2] This fact is contained in the Plaintiff's Rule 56(a)(2) statement and admitted by the Defendants. It is unclear to the Court how a conversion of $3,300 in principal on a $25,000 debt results in a remaining principal balance of $22,500.00, but assumes that terms of the agreements not before the Court render it so.

**Discussion**

    **Motion to Dismiss**

The Court first addresses PotNetwork's challenge to the Court's exercise of personal jurisdiction over it. Southridge relies upon the forum selection clause in the STA and asserts that it affords this Court personal jurisdiction over PotNetwork. Conversely, PotNetwork asserts that it is not subject to the forum selection clause of the STA. PotNetwork does not challenge the validity of the forum selection clause or its enforceability generally. It challenges only whether, under the circumstances here, PotNetwork is bound by it.

An enforceable forum selection clause amounts to consent to personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14 (1985). Further, "[w]here an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under the state long-arm statutes or federal constitutional due process." *Bricken v. Bergtholdt,* No. 11cv1992(WWE), 2012 WL 2958217, at *1 (D.Conn. July 19, 2012). Therefore, if the Court determines that PotNetwork is subject to the clause, the Court may exercise personal jurisdiction over it.

It is a "fundamental principle of contract law [,] that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (enforcing forum selection clause where plaintiff had not read the clause prior to signing the contract) (citing 3 Arthur L. Corbin, *Corbin on Contracts* 607 (1989), and 13 Samuel Williston, *Williston on Contracts* 1577 (1988)); *see also Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 382 (S.D.N.Y. 2001) ("a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed").

Section 6(a) of the STA provides: "THIS AGREEMENT SHALL BE ENFORCED, GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CONNECTICUT … THE PARTIES HERETO HEREBY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE UNTED STATES FEDERAL OR STATE COURTS LOCATED IN FAIRFIELD COUNTY, CONNECTICUT WITH RESPECT TO ANY DISPUTE ARISING UNDER THIS AGREEMENT, THE AGREEMENTS ENTERED INTO IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY…."

There is no question that PotNetwork is a party to the STA, having signed the agreement and undertaken specific obligations under the agreement. There is no question that this litigation is or involves a dispute "arising under" the STA, "the agreements entered into in connection" with the STA, or "transactions contemplated" by the STA. Indeed, PotNetwork acknowledges that in signing the STA, it was undertaking certain and very significant obligations to Southridge. Those obligations are contained in Section 1(d) and include the issuance of a Replacement Note, which is easily described as an "agreement[] entered into in connection" with the STA. Notwithstanding these immutable facts, and notwithstanding the clear and unambiguous nature of the forum selection clause cited above, PotNetwork asserts that it limited the extent to which the STA applied to it. PotNetwork contends that when signing the STA, it only signed an acknowledgement of its obligations under Section 1(d) of the STA and cannot therefore be bound by Section 6(a), in which the forum selection clause is found. It relies upon the contract construction maxim "expressio unius est exclusio alterius" – that is, expression of one thing is the exclusion of another.

On the signature page of the STA, above PotNetwork's signatory is the following: "The undersigned acknowledges and agrees to the representations, covenants and agreements made by

7

it in Section 1(d) of this Agreement." PotNetwork relies upon this language and argues that only Section 1(d) applies to PotNetwork and/or binds PotNetwork in any fashion. This Court disagrees.

The Court begins with the well-established tenets of contract construction.

> "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction.... [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.... Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.... Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Niehaus v. Cowles Business Media, Inc.,* 263 Conn. 178, 188–89, 819 A.2d 765 (2003).
>
> [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *United Illuminating Co. v. Wisvest–Connecticut, LLC,* 259 Conn. 665, 670, 791 A.2d 546 (2002). "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." Id., at 671, 791 A.2d 546. By contrast, "language is unambiguous when it has a definite and precise meaning ... concerning which there is no reasonable basis for a difference of opinion." *Levine v. Advest, Inc.,* 244 Conn. 732, 746, 714 A.2d 649 (1998). …

*Poole v. City of Waterbury*, 266 Conn. 68, 87–89 (2003).

It is axiomatic that if PotNetwork failed to meet its obligations under the STA, such failure could give rise to litigation. The STA, which *binds Southridge* in terms of the forum selection clause, requires litigation to commence, if at all, in Connecticut. Accepting PotNetwork's interpretation that it did not consent to the forum selection clause would leave Southridge without any remedy in the event of a breach by PotNetwork. PotNetwork could assert the forum selection clause as a sword against Southridge if litigation was commenced outside Connecticut and could avoid having to litigate in Connecticut, as it seeks to do here, under either the long arm statute or on constitutional grounds if the clause did not apply to it. It would be an absurd result to interpret

8

the contract in a manner that leaves one party without a remedy in the event of a breach by the other. *See, e.g.*, *Konover v. Kolakowski*, 186 Conn. App. 706, 716 (2018) ("Our courts refuse to 'construe a contract's language in such a way that it would lead to an absurd result.'") (quoting *Welch v. Stonybrook Gardens Co-op., Inc.*, 158 Conn. App. 185, 198 (2015), *cert. denied*, 318 Conn. 905 (2015)); *Welch*, 158 Conn. App. at 199 (when interpreting contracts, "bizarre results are to be avoided"). *see also Outlet Embroidery Co. v. Derwent Mills*, 254 N.Y. 179, 183 (1930) (Cardozo, *C.J.*) ("If literalness is sheer absurdity, we are to seek some other meaning whereby reason will be instilled and absurdity avoided.")

Moreover, to the extent that claims arising under the STA are also brought against SND, as is the case here, under PotNetwork's construction of the STA, Southridge would be forced to litigate against the Defendants separately, in different forums and necessarily in piecemeal fashion.[3] PotNetwork's construction of the STA on this issue would result in duplicative discovery, uneconomical use of judicial resources, the potential for inconsistent outcomes, and a host of other extremely inefficient and costly consequences.

The Court also looks to the remainder of Section 6, which includes, in addition to the forum selection clause, numerous significant provisions and protections regarding the STA. It has a provision for "Counterparts; Signatures by Facsimile" at 6(b); "headings" at 6(c); "Severability" at 6(d); an integration clause at 6(e); Notice provisions at 6(f); provisions regarding successors and assignees at 6(g); a limitation on third party beneficiaries at 6(h); and a provision regarding construction of the language of the contract at 6(j). Significantly, Section 6(i) provides: "Each party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents,

---

[3] This assumes of course that PotNetwork did not successfully assert the forum clause against Southridge in the alternative forum.

as the other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby." Under PotNetwork's interpretation, none of these standard contract provisions, which include both significant protections and obligations for all parties, would apply to PotNetwork.

Finally, PotNetwork's reliance upon the maxim *expressio unius est exclusion alterius* is misplaced. Historically, this maxim is an aid in the interpretation of statutes, *see Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003), though it has been recognized as applicable in the interpretation of contracts as well. *Biro v. Matz*, 132 Conn. App. 272, 282 (2011) ("Long a staple of our statutory interpretation, this court also has applied the principle [*expressio unius est exclusio alterius*] to contractual agreements.").[4] In discussing this maxim, the Supreme Court has held that "[t]he force of any negative implication, however, depends on context. The *expressio unius* canon applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (internal quotations and citations omitted). "As we have held repeatedly, the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart*, 537 U.S. at 168 (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)); *see also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) ("*expressio unius* properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is

---

[4] The vast majority of the cases in which this maxim is discussed involve statutory interpretation. Given the very limited circumstances in which it may be invoked, it is unclear to this Court that it would often provide much guidance in the context of contract interpretation.

omitted that the contrast enforces the affirmative inference") (internal citations and quotations omitted).

Here, there is no listing, grouping, or associated group or series out of which a negative implication arises. There is only the single reference to Section 1(d), from which PotNetwork would argue, the remainder of the STA is rendered inapplicable to it. These circumstances do not support a "sensible inference that the term left out," here the remainder of the contract, "must have been meant to be excluded." *Echazabal*, 536 U.S. at 81. Accordingly, under these circumstances, as an aid to contract interpretation, the maxim provides little assistance. The fact that PotNetwork signed the document acknowledging the Section in which its obligations are spelled out does not, by implication, render the remainder of the STA inapplicable to PotNetwork.

Applying the principles of contract construction set forth above, the Court finds that the language relied upon by PotNetwork does not create ambiguity in an otherwise clear and unambiguous forum selection clause. Accordingly, the Court finds that it may exercise personal jurisdiction over PotNetwork pursuant to the forum selection clause in the STA.

**Motion for Summary Judgment - Breach of Contract/Specific Performance**

The Court next considers Southridge's motion for partial summary judgment.

In seeking summary judgment, Southridge asserts that there is no genuine issue of material fact that PotNetwork breached the STA when it failed to honor the Second Conversion Notice as amended in April 2017. PotNetwork responds by seeking dismissal of these claims, contending that the Second Conversion Notice was deficient for multiple reasons and that the purported amendment was untimely and otherwise relied upon the incorrect conversion formula. Each argument derives from the Parties' competing interpretations of the STA and Note 2. Each Party

points to specific language in the documents or conduct on the part of the other Party to support their competing interpretations.

The Court analyzes these claims under the same tenets of contract interpretation set forth above. As noted, the Parties' arguments advance alternative interpretations of the STA and Note 2. For example, the Parties disagree as to whether the issuance of the Replacement Note was a condition precedent to the use of the conversion formula in the STA. The STA provides that SND shall deliver a Purchase Note to Southridge. PotNetwork, upon receipt of the Purchase note from Southridge, was required to issue the Replacement Note. The Purchase Note would reflect Southridge's interest under the identical terms contained in Note 2. The Replacement Note would mirror those terms, except that the conversion formula would be that which was contained in the STA, instead of Note 2. Here, the Purchase Note was not issued by SND, and likewise the Replacement Note was not issued by PotNetwork. The question then is whether the conversion formula from Note 2 or the conversion formula from the STA was applicable to the Second Conversion Notice. The STA does not unambiguously answer this question. As noted, both Parties point to language and/or conduct which reasonably supports their respective positions.

In addition, regardless of which conversion formula is ultimately found to be applicable (either Note 2's or the STA's), the Parties also disagree as to whether the Second Conversion Notice could be amended in April, yet still use the January stock prices during the look back period for purposes of the conversion formula. Neither party cites to any contractual provision that would resolve this issue.[5] PotNetwork posits that the look back period itself is the appropriate limit on

---

[5] Indeed, both the STA and Note 2 are silent on this issue. As such, extrinsic evidence is necessary to resolve this question of fact. *See Parisi v. Parisi*, 315 Conn. 370, 383 (2015) ("When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract…. Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument.… When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact.").

amendment or curing a deficient conversion notice. In the absence of any specific contract provision, Southridge summarily asserts that the April amendment was valid and the conversion formula using January look back prices was appropriate. Resolving this issue necessarily requires evidence as to the intent of the Parties.

These are merely examples of the genuine issues of material fact to be tried in this case. To be sure, there are others. Accordingly, Southridge's Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of May 2019.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE