# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOUTHRIDGE PARTNERS II LIMITED PARTNERSHIP,<br>    *Plaintiff*, | 3:17-CV-1925 (KAD) |
| v. | |
| SND AUTO GROUP, INC.,<br>POTNETWORK HOLDINGS, INC.,<br>SIGN N DRIVE AUTO MALL, INC.,<br>CHARLES VACARRO, SECURITIES<br>COUNSELORS, INC., GARY L. BLUM, ,<br>POTNETWORK HOLDING INC.,<br>RANDALL GOULDING, RICHARD<br>GOULDING,<br>    *Defendants.* | December 19, 2019 |

## MEMORANDUM OF DECISION
## RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 51)

Kari A. Dooley, United States District Judge:

**Preliminary Statement**

On May 24, 2019, this Court denied the motion for partial summary judgment asserted by Plaintiff Southridge Partners II Limited Partnership ("Southridge" or the "Plaintiff") as to Counts One and Three of its Second Amended Complaint. (ECF No. 41.) In that Memorandum of Decision, the Court simultaneously rejected the argument raised by Defendant PotNetwork Holdings, Inc. ("PotNetwork") in its opposition to Southridge's motion for summary judgment and by way of its own motion for summary judgment and supporting memorandum (ECF Nos. 51, 59), that the Court lacked personal jurisdiction over PotNetwork. *See Southridge Partners II Ltd. P'ship v. PotNetwork Holdings, Inc.*, No. 3:17-CV-1925 (KAD), 2019 WL 2248691 (D. Conn. May 24, 2019). Instead, the Court concluded that it could exercise personal jurisdiction over

PotNetwork pursuant to a valid forum selection clause embodied in the relevant Securities Transfer Agreement ("STA") executed between Southridge and Defendant Sign N Drive Auto Mall, Inc. ("SND"), to which PotNetwork was a limited signatory.

In this Memorandum of Decision, the Court addresses the remaining arguments of the other Defendants raised in their memorandum in support of the motion for summary judgment and in opposition to Southridge's motion for summary judgment. Specifically, the Defendants argue that the Court lacks personal jurisdiction over Defendants Gary Blum, Charles Vacarro, Richard Goulding, Randall Goulding, Securities Counselors, Inc., and SND Auto Group, Inc. ("New SND").[1] PotNetwork also seeks dismissal of Counts Five and Six of the Second Amended Complaint (the "SAC," ECF No. 27) which allege breach of warranty and fraud/misrepresentation, for the same reasons previously advanced but rejected in this Court's May 2019 Memorandum of Decision.[2] Finally, Defendants assert that they are entitled to summary judgment as to Counts Seven, Eight, and Nine because Defendants, as agents of the corporations who were parties to the contracts at issue, cannot, as a matter of law, tortiously interfere with their own contracts.[3] For

---

[1] The Defendants concede that the claims against Defendant SND "are properly before this Court" (Defs.' Mem. at 7) and the Court therefore does not address personal jurisdiction as to SND. Nor does the Court address personal jurisdiction as to PotNetwork Holding Inc. ("New PHI"), as Defendants do not identify New PHI as being subject to their motion.

[2] Defendants argue that PotNetwork should be dismissed from Count Five asserting breach of warranty and Count Six alleging fraud/misrepresentation because PotNetwork's signature on the STA did not bind it to the STA's representation that SND was not an "affiliate" of PotNetwork within the meaning of Securities and Exchange Commission Rule 144. (Defs.' Mem. at 11; SAC ¶¶ 100–108.) Defendants' argument that PotNetwork's signature only bound it to the terms set forth in Section 1(d) of the STA was previously rejected by this Court. *See Southridge Partners II Ltd. P'ship*, 2019 WL 2248691, at *6 ("The fact that PotNetwork signed the document acknowledging the Section in which its obligations are spelled out does not, by implication, render the remainder of the STA inapplicable to PotNetwork."). The Court accordingly denies Defendants' motion as to Counts Five and Six without further discussion herein.

[3] Although Defendants titled their motion as one for summary judgment, they acknowledge that certain of their arguments are more appropriately raised and reviewed in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b). (Defs.' Mem. at 3 n.1.) The Court agrees, including with respect to those arguments made regarding Counts Seven, Eight and Nine. Therefore, the Court applies the standard for considering and deciding motions to dismiss under Rule 12(b)(6) with respect to Plaintiff's tortious interference with contractual relations claims found in Counts, Seven, Eight and Nine.

purposes of this memorandum, the Court assumes the parties' familiarity with the underlying facts and procedural history of the case, as recounted in its previous decision. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**Standards of Review**

### Personal Jurisdiction

"A plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant." *Carney v. Beracha*, 996 F. Supp. 2d 56, 60 (D. Conn. 2014) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) (quoting *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). "The court 'construes the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor,' but the court is 'not bound to accept as true a legal conclusion couched as a factual allegation,' and a plaintiff may not rely on 'conclusory non-fact-specific jurisdictional allegations.'" *Id.* (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), and *Janzini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)) (brackets and internal citation omitted).

"[P]ersonal jurisdiction is determined by the law of the state in which the district court sits." *Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009). "If the exercise of jurisdiction is appropriate under [Connecticut's] statute, the court then must decide whether such exercise comports with the requisites of constitutional Fourteenth Amendment due process." *Ferrara v. Munro*, 585 B.R. 269, 282 (D. Conn. 2018). For the Court's exercise of personal jurisdiction to satisfy due process, the non-resident must have sufficient "minimum contacts" with the forum state

"such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (brackets omitted).

However, as relevant here, "[w]here an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under the state long-arm statutes or federal constitutional due process," *Bricken v. Bergtholdt*, No. 11-CV-1992 (WWE), 2012 WL 2958217, at *1 (D. Conn. July 19, 2012), because "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements," *D.H. Blair & Co.*, *Inc. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir. 2006); *see also Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App. 650, 653 (App. Ct. 1998) ("Thus, in commercial transactions, parties often consent to resolve disputes in a particular jurisdiction by incorporating forum selection clauses into their contracts. Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal.")

**Motion to Dismiss**

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and draw all inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). The complaint, however, "must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk*

*v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The requirement to allege 'facts' means that 'bald assertions' and 'merely conclusory allegations' do not suffice." *Bakhit v. Safety Markings, Inc.*, 33 F. Supp. 3d 99, 103 (D. Conn. 2014) (citations omitted).

## Discussion

### Whether This Court May Exercise Personal Jurisdiction Over the Remaining Defendants Pursuant to the STA Forum Selection Clause

Having previously concluded that the forum selection clause establishes personal jurisdiction over Defendant PotNetwork, the Court must next consider whether the forum selection clause is enforceable as to the other contested Defendants, none of whom are personal signatories to the STA.[4]

#### *Legal Standard*

The Second Circuit conducts a four-part inquiry to assess the enforceability of a forum selection clause. The first questions are: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [] dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quotation marks and citation omitted). Satisfaction of these factors creates a presumption of enforceability, which can

---

[4] Although Defendants Gary Blum, Charles Vacarro, Randall Goulding, and Richard Goulding have each submitted affidavits averring to their lack of contacts with the State of Connecticut (ECF Nos. 52, 53, 55, 58), as noted above, the Court need not determine whether Defendants' contacts and activities satisfy the State's long-arm statute or the requirements of due process if the Court concludes that Defendants have consented to jurisdiction via application of the STA forum selection clause. *See Bricken*, 2012 WL 2958217, at *1; *see also, e.g.*, *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 334–35 (S.D.N.Y. 2018). For the same reason, the Court does not reach Defendants' additional argument that the "fiduciary shield doctrine" precludes this Court from exercising personal jurisdiction over the corporate officer Defendants on the basis of each of their respective corporate entity's Connecticut contacts.

be overcome at step four by "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (quotation marks and citations omitted). The Defendants here assert that, as non-signatories to the STA, the forum selection clause should not be enforceable against them.[5]

There is "ample support for the conclusion that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases). Rather, "where the alleged conduct of the non[signatories] is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (quotation marks and citation omitted). While "[i]t is well established in this Circuit that a non-signatory may enforce a forum selection clause against a signatory where the non-signatory is 'closely related' to a signatory . . . the Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory." *Prospect Funding Holdings, LLC v. Vinson*, 256 F.Supp.3d 318, 324 (S.D.N.Y. 2017) (citing, *inter alia*, *Magi XXI*, 714 F.3d at 723). Nonetheless, district courts in this Circuit have applied the "closely related" standard in this context.[6] *See id.* (collecting cases); *see also, e.g.*, *Power Up*

---

[5] Citing a Florida choice of law provision in the Convertible Promissory Note executed in July 2015 between PotNetwork and SND ("Note 2"), Defendants argue that Florida law disfavors enforcement of forum selection clauses against non-resident defendants who are not otherwise subject to the Court's jurisdiction. (Defs.' Mem. at 4; Hicks Decl. Ex. D, ECF No 44-1.) This argument is unavailing. First, the STA contains a Connecticut choice of law provision (SAC Ex. B § 6), and the Court concluded in its prior decision "that this litigation is or involves a dispute 'arising under' the STA, 'the agreements entered into in connection' with the STA, or 'transactions contemplated' by the STA." *Southridge Partners II Ltd. P'ship*, 2019 WL 2248691, at *4. Second, the choice of law question does not impact the Court's analysis, as questions pertaining to the enforceability of a forum selection clause, as opposed to its interpretation, are resolved by federal law. *See Martinez*, 740 F.3d at 217–18.

[6] In addition, "[o]ther Circuits have enforced a forum selection clause against a non-signatory where the non-signatory is closely related to the signatory." *McLarty Capital Partners SBIC, L.P. v. Brazda*, No. 18-CV-2599 (DLC), 2018 WL 3104093, at *2 (S.D.N.Y. June 20, 2018) (citing *Marano Enters. of Kan. v. Z-Teca Rests., L.P.* 254 F.3d 753, 757

*Lending Grp., Ltd. v. Nugene Int'l, Inc.*, No. 17-CV-176601 (SJF) (AKT), 2019 WL 2119844, at *9–*10 (E.D.N.Y. Jan. 10, 2019), *report and recommendation adopted*, 2019 WL 989750 (E.D.N.Y. Mar. 1, 2019) (applying forum selection clause to uphold exercise of personal jurisdiction over non-signatory defendant).

"The case law makes clear that 'closely related' in this sense is a fairly strict standard." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019). "This strict standard has some district courts asking whether a non-signatory could reasonably foresee that it would be bound to the clause, and others asking whether the non-signatory's interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Power Up Lending Grp., Ltd.*, 2019 WL 2119844, at *7 (quotation marks and citations omitted); *see also Miller*, 291 F. Supp. 3d at 523 (articulating same standards). Thus "many courts have used the doctrine to bind non-party, non-signatory corporate officers to contracts entered into by their corporate employer." *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors Corp.*, 875 F. Supp. 2d 297, 307 (S.D.N.Y. 2012) (citing cases); *see also BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 275 (D. Conn. 2009) (recognizing the same principle). To otherwise bind a non-signatory on the basis of foreseeability "implies that the non-signatory must have been . . . involved in the transaction in some manner." *Recurrent Capital*, 875 F. Supp. 2d at 307–08; *see also Leviton Mfg. Co., Inc. v. Reeve*, 942 F. Supp. 2d 244, 259 (E.D.N.Y. 2013) (observing that the case law typically requires that the non-signatory have played some kind of "active role in the transaction" or in the signatory company to be bound by the forum selection clause). In addition, "the principle of mutuality, i.e., whether the [defendant] would be entitled to enforce the forum selection clause against the

_____

(8th Cir. 2001), and *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993)); *see also Magi XXI*, 714 F.3d at 723 (citing, *inter alia*, *Hugel*, 999 F.2d at 209, for its articulation of the "closely related" test).

[plaintiff], is a useful factor in assessing whether the closely-related test is satisfied." *Sawch v. Life Techs. Corp.*, No. 3:11-CV-1359 (AWT), 2012 WL 4191384, at *2 (D. Conn. Sept. 18, 2012).

### Defendant Blum

Applying these standards, the forum selection clause is enforceable against Defendant Gary Blum. In his affidavit filed in connection with the cross-motions for summary judgment, Blum acknowledges that at all relevant times he has either served as "the Chairman of the Board or CEO of defendant PotNetwork Holdings, Inc." (Blum Decl. ¶ 1, ECF No. 52.) Blum also signed the STA in his capacity as the CEO of PotNetwork. (*See* SAC Ex. B, ECF No. 27-1.) He was therefore directly "involved" in the transaction at issue and his execution of the STA on PotNetwork's behalf establishes that it was foreseeable to him that he would be bound by the agreement's forum selection clause in disputes arising under the STA. *See Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) ("Based on the fact that [the defendant] himself signed the MOU (albeit in his representative rather than individual capacity), it was—or should have been—foreseeable to him that the clause might have application to disputes arising under that agreement that also involved him.").

The same conclusion holds even though Southridge's claim against Blum, at Count Eight, sounds in tortious interference with contractual rights as opposed to breach of contract. *See Magi XXI*, 714 F.3d at 724 ("A contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims 'ultimately depend on the existence of a contractual relationship' between the signatory parties.") (citation omitted); *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 597 (S.D.N.Y. 2017) ("[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.") (quoting *Magi XXI*, 714 F.3d at 724–25). Here, the SAC alleges that "with

intent to interfere with Southridge's conversion rights under the STA and Note 2, Blum, working in conjunction with or at the direction of Vacarro, used his position and office with [PotNetwork] to cause [PotNetwork] to disregard the Second Conversion Notice and not issue the Conversion Shares to Southridge." (SAC ¶ 119.) Because Southridge's tort claims grow out of the contractual relationship and the gravamen of the claim is that the alleged tortious conduct resulted in a breach of the STA and Note 2, the forum selection clause applies. *See Firefly Equities*, 736 F. Supp. 2d at 800.

### *Defendant Vacarro*

The forum selection clause in the STA is also enforceable against Defendant Vacarro. He too is alleged to have been significantly involved in the STA transaction. The SAC alleges that Vacarro was, "at all relevant times, . . . a control person with respect to both SND, SAMI, and [PotNetwork] in that he possessed the power to direct the management and policies of all of those companies." (SAC ¶¶ 26, 107.) Vacarro acknowledges that he is the CEO and President of SND. (Vacarro Decl. ¶ 1, ECF No. 53.) According to Stephen Hinks, the Chairman and CEO of Southridge Advisors II LLC, which is the general partner of Plaintiff Southridge (*see* Hinks Decl. ¶ 2, ECF No. 44):

> Southridge got involved in[sic] with [PotNetwork] when defendant Charles Vacarro contacted Southridge to convince Southridge to purchase of[sic] a portion of the convertible promissory note (i.e. Note 2) that his company, Sign N Drive Auto Mall, Inc. ("SND") held. Mr. Vacarro called our Connecticut office nearly every day over a two week period. Mr. Vacarro, as the owner of SND, was very involved in the negotiation of the STA. Mr. Vacarro was the only person negotiating the STA on behalf of the Seller <u>and</u> [PotNetwork.]

(Hinks Supp. Decl. ¶ 9, ECF No. 63.) Hinks avers that he was personally "involve[d] in the negotiations and due diligence leading up to Southridge's execution" of the STA. (Hinks Decl. ¶ 3.) Vacarro has not denied these contentions. Thus, as both a principal of SND and a negotiator

of the STA, Vacarro was "closely related" to SND, a signatory of the STA, as well as to the subject transaction, such that it was reasonably foreseeable that he would be bound by the agreement's forum selection clause. *See Recurrent Capital*, 875 F. Supp. 2d at 311 ("Because [the defendant] was closely related to ISR's efforts to obtain financing in New York, and because the Subscription Agreement was a product of those efforts, [the defendant] is bound by the Subscription Agreement's forum selection clause.").

### Defendant Richard Goulding

The application of the forum selection clause to Defendant Richard Goulding presents a closer call. While Richard Goulding is the President of PotNetwork (Richard Goulding Decl. ¶ 1, ECF No. 58), neither the SAC nor the available record evidence establishes that he was involved in negotiating the STA. To the contrary, the only facts alleged with respect to Richard Goulding pertain to his actions taken *after* execution of the STA—namely, his role in effecting and later unwinding a merger agreement between PotNetwork and New SND, which Southridge contends was devised in an effort to prevent Southridge from exercising its conversion rights under the STA and Note 2. (*See* SAC ¶¶ 70, 126–27, 130–31.) But the "closely related" test may be satisfied "where the non-signatory had an active role in the company that was the signatory." *Prospect Funding Holdings*, 256 F. Supp. 3d. at 325. Absent evidence to the contrary with respect a particular transaction, it would be counterintuitive to conclude that a company's President does not play an "active role" in its business operations and decisions. *See, e.g.*, *H.A.L. NY Holdings, LLC v. Guinan*, No. 18-CV-2275 (ER), 2018 WL 5869648, at *4 (S.D.N.Y. Nov. 9, 2018) (explaining that courts have held frequently "that non-signatory corporate executives and officers are 'closely related' to a signatory company such that enforcement of a forum selection clause in an agreement made by the company was foreseeable"). In light of the ample precedent for finding

non-signatory corporate officers "closely related" to the corporation or its transactions, and because doubts regarding facts that bear on personal jurisdiction must be resolved in the plaintiff's favor, *e.g.*, *Carney v. Horion Investments Ltd.*, 107 F. Supp. 3d 216, 222 (D. Conn. 2015), the Court concludes that the forum selection clause is enforceable against Richard Goulding and that the Court therefore has personal jurisdiction over Richard Goulding.[7]

### Defendants Randall Goulding and Securities Counselors, Inc.

The same is not true with respect to Defendants Attorney Randall Goulding and Securities Counselors, Inc. ("SCI"). The only facts alleged as to Randall Goulding and SCI pertain to Attorney Goulding having advised PotNetwork and Vacarro in connection with the crafting and unwinding of the merger transaction, which post-dated the execution of the STA. (*See* SAC ¶¶ 58–78, 126–132.) The SAC does not allege any facts which would support a finding that either Defendant is sufficiently "closely related" to the STA transaction or to its signatories. Southridge relies on the fact that Randall Goulding wrote to Southridge in April 2017 acknowledging Southridge's investment in PotNetwork to demonstrate his awareness of the STA. (Pl.'s Mem. at 20, ECF No. 62.) This evidence is insufficient to establish that Attorney Goulding was aware of the forum selection clause or that it was reasonably foreseeable that he and SCI would be subject to it by virtue of providing legal advice in the aftermath of the transaction. *Cf. Leviton Mfg.*, 942 F. Supp. 2d at 258–59 ("The Plaintiff has not pointed to, and the Court has not uncovered, any case in which outside counsel was held to a forum selection clause contained in an agreement for a transaction in which that counsel provided some sort of due diligence or opinion" and holding that counsel's role was too attenuated to satisfy the "closely related" test); *see also Prospect*

---

[7] Under the "principle of mutuality," moreover, Richard Goulding would likely be entitled to enforce the forum selection clause against Southridge if Southridge had brought suit against him under the STA in a different forum, *see Sawch*, 2012 WL 4191384, at \*2, which further supports the exercise of personal jurisdiction over him pursuant to the clause.

*Funding Holdings*, 256 F. Supp. 3d at 325 (holding that "closely related" test was not satisfied with respect to attorney that came to represent signatory months after the subject transactions were finalized).

Nor does the SAC allege any facts to support Plaintiff's conclusory contention that the Court has personal jurisdiction over Randall Goulding or SCI pursuant to Connecticut's long-arm statute. (SAC ¶¶ 12–13; *see* Conn. Gen. Stat. § 33-929(e)-(f); *id.* § 52-59b.); *see Matthews v. SBA, Inc.*, 149 Conn. App. 513, 552, 89 A.3d 938 (App. Ct. 2014) (plaintiff "must present specific, and not simply conclusory, allegations" which "must allege jurisdictional facts sufficient to prove that the court had personal jurisdiction over a specific defendant"). Allegations enabling the Court to undertake a due process analysis with respect to each of these two foreign Defendants are also absent. (*Cf.* Randall Goulding Decl. ¶ 3, ECF No. 55 (stating that Randall Goulding is a resident of Illinois who has never lived nor transacted business in Connecticut); *id.* ¶ 4 (stating that Securities Counselors, Inc. is an Illinois corporation with offices in Illinois and Maryland that has never transacted business in Connecticut).) Accordingly, the Court does not have personal jurisdiction over Randall Goulding and SCI and Count Nine is dismissed with respect to these two Defendants.

### Defendant New SND

Defendant New SND was the surviving entity in a merger transaction allegedly entered into with PotNetwork in March 2017, through which all of PotNetwork's outstanding shares of common stock were converted into New SND stock. (*See* SAC ¶¶ 51, 57.) As discussed in greater detail below, the SAC alleges that Defendants designed the merger transaction to prevent Southridge from exercising its right to convert its debt into PotNetwork's stock under Note 2 and that following the merger, Defendants instead treated Southridge as a creditor of New SND. (*Id.*

¶ 63.) The SAC also alleges that New SND was created by, and as an instrumentality of, PotNetwork. (*Id.* ¶ 66.) Defendants again argue in conclusory form that New SND is not subject to personal jurisdiction under the forum selection clause, as it was not a signatory to the STA. (Defs.' Mem. at 3.) However, the facts as alleged support the inference that New SND is a successor-in-interest or an alter ego of PotNetwork, either of which would warrant enforcement of the forum selection clause as to New SND. *See KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011) ("[S]uccessors-in-interest unquestionably fit within the definition of 'closely related[]'"); *Magi XXI*, 714 F.3d at 722 ("[A] non-signatory successor in interest to a signatory of a contract is subject to the 'presumption of the enforceability of mandatory forum selection clauses' in the contract.") (quoting *Aguas*, 585 F.3d at 701); *see also Elec. Mobile Cars, LLC v. Elec. Mobile Cars, Inc.*, No. 12-CV-5202 (JSR), 2012 WL 5264454, at *1 (S.D.N.Y. Oct. 17, 2012) (holding that alleged alter egos of signatory defendant necessarily satisfy "closely related" standard). Defendants have not set forth any facts to the contrary or otherwise challenged the assertion of personal jurisdiction on any other basis specific to New SND. *See, e.g.*, *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("[A] Court need not entertain an argument that was not briefed"). Accordingly, the forum selection clause is enforceable against New SND and the Court therefore has personal jurisdiction over New SND.

### Whether Defendants Have Made a Sufficiently Strong Showing That Enforcement of the Forum Selection Clause Would Be Unreasonable or Unjust

Given the strong public interests that are served by honoring forum selection clauses, the Supreme Court has stated "that they should be invalidated only when the resisting party satisfies the 'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.'" *Martinez*, 740 F.3d at 218–19 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 13–14 (1972)).  Having concluded that the forum selection clause is presumptively enforceable against the parties identified above, the Court must consider the last prong of the Second Circuit's four-part test discussed above.  Thereunder, the Court may decline to enforce a forum selection clause "if '(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum' in which suit is brought; 'or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.'"  *Id.* at 228 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007)); *see also Nymbus, Inc. v. Sharp*, No. 3:17-CV-01113 (JAM), 2018 WL 705003, at *4 (D. Conn. Feb. 5, 2018) (emphasizing that "[t]he Second Circuit has stated that it will refuse to enforce a form selection clause *'only if'*" one of these four factors is met) (citing *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 198 (2d Cir. 2015)).

Defendants argue that "if the non-signatory has no other forum contacts, *another party's* agreement to designate a forum cannot be constitutionally extended to the non-signatory," (Defs.' Mem. at 4) and that enforcement of the forum selection clause would be "unreasonable or unjust" where the defendant lacks "'minimum contacts' with the forum sufficient to satisfy due process." (Defs.' Reply at 1–2, ECF No. 69.)  Defendants' assertions do not address any of the four relevant considerations set forth above, but instead challenge the constitutional validity of the "closely related" test itself.  *See, e.g.*, *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926–28 (N.D. Ill. 2017) (declining to adopt "closely related test" in the absence of corporate affiliation or a "formal legal relationship" between the signatory and non-signatory and identifying constitutional concerns with implied waivers of personal jurisdiction).  However, this Court is bound to apply the law of the Circuit, which has disavowed "[a] literal approach to interpreting forum selection

clauses" and instead recognizes that "a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Magi XXI*, 714 F.3d at 722 (quotation marks and citations omitted). Because Defendants do not otherwise set forth any facts to sustain their heavy burden of showing that the forum selection clause was incorporated into the STA by "fraud or overreaching," or that other policy concerns are strongly implicated, *see Martinez*, 740 F.3d at 228, the Court does not revisit its conclusion that Defendants Blum, Vacarro, Richard Goulding, and New SND are sufficiently "closely related" to the STA transaction and/or PotNetwork and/or SND as to warrant enforcement of the forum selection clause against them.

**Tortious Interference Claims**

Having concluded that the Court has personal jurisdiction over Defendants Blum, Vacarro, and Richard Goulding, the Court must next address Defendants' motion to dismiss the tortious interference claims asserted against these Defendants as set forth in Counts Seven, Eight, and Nine. The SAC alleges that Vacarro and Blum used their control over, and position with, PotNetwork, to cause PotNetwork to ignore Southridge's Second Conversion Notice, thereby interfering with Southridge's right to convert its interest in Note 2 into stock under the STA. (SAC ¶¶ 109–124.) Defendants argue that Plaintiff cannot state a claim for tortious interference with the STA against Vacarro and Blum as a matter of law, because both Defendants are agents of PotNetwork, a party to the STA. (Defs.' Mem. at 9–10.) And insofar as the claim against Richard Goulding for aiding and abetting the tortious interference is derivative of the claims against Vacarro and Blum, Defendants assert that it too must fail.

*Legal Standard*

"A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was cause[d] by the defendant's tortious conduct." *Rioux v. Barry*, 283 Conn. 338, 351, 927 A.2d 304 (2007).[8] "However, it is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two *other* parties." *Metcoff v. Lebovics*, 123 Conn. App. 512, 520, 2 A.3d 942 (App. Ct. 2010) (quoting *Wellington Sys., Inc. v. Redding Grp., Inc.*, 49 Conn. App. 152, 168, 714 A.2d 21 (App. Ct. 1998)). Thus, generally an "agent may not be charged with having interfered with a contract of the agent's principal." *Id.* (quoting *Appleton v. Board of Educ.*, 53 Conn. App. 252, 267, 730 A.2d 88 (App. Ct. 1999)). An exception to this general rule is recognized where "the agent 'did not act legitimately within his scope of duty but used the corporate power improperly for personal gain.'" *Id.* at 521 (quoting *Wellington Sys.*, 49 Conn. App. at 168). "In other words, where a plaintiff fails to allege facts showing that a contractual party's agent acted outside of the scope of his duty, the agent's actions are not distinct from those of the contractual party and thus the common law bars a tortious interference claim against the agent in his individual capacity." *Wood & Bricks, LLC v. TD Dev., LLC*, No. 3:16-CV-123 (MPS), 2018 WL 6605623, at *2 (D. Conn. Dec. 17, 2018). "In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose

---

[8]As previously noted, the STA dictates that Connecticut substantive law governs these claims.

to serve the employer." *Id.* n. 2 (quoting *Harp v. King*, 266 Conn. 747, 782–83, 835 A.2d 953 (2003)).

Here, Southridge asserts that Vacarro, as a controlling shareholder and not an officer, was not an "agent" of PotNetwork (Pl.'s Mem. at 22) and that even if Vacarro is deemed an agent, the SAC reflects allegations sufficient to support a claim that Vacarro was acting for his personal interest and outside the scope of his authority. Southridge further relies on the allegations in the SAC that Blum was acting at Vacarro's direction and in concert with Vacarro to prevent the diminution of Vacarro's interest in PotNetwork, as opposed to acting in the best interest of the company. (*Id.* at 22–23.) Defendants respond that PotNetwork's rejection of Southridge's Second Conversion Notice was based upon its enforcement of a conversion cap set forth in the STA and was therefore necessarily in the company's best interest. Defendants cite a multitude of authorities explaining the legal implications of a conversion cap in support of their contention that PotNetwork was justified in rejecting the Second Conversion Notice. (Defs.' Reply at 4–6.)

### Defendant Blum

The Defendants' arguments, which go to the merits of Southridge's claims, are beyond the scope of the Court's analysis under Rule 12(b)(6). But the Court agrees that Plaintiff's allegations against Defendant Blum are insufficient to withstand dismissal. As discussed above, to invoke the exception to the rule that an agent cannot be found to have tortuously interfered with his own principal's contract, a plaintiff must "allege facts showing that a contractual party's agent acted outside of the scope of his duty." *Wood & Bricks, LLC*, 2018 WL 6605623, at *2. No such facts are alleged as to Blum, who, at all relevant times, served as either PotNetwork's Chairman of the Board or CEO (SAC ¶ 117; Blum Decl. ¶ 1), and therefore presumptively acted within the scope of his authority in rejecting the conversion notice. *See Metcoff*, 123 Conn. App. at 522–23

(upholding strike of tortious interference claim where plaintiffs "failed to allege facts that would support their legal conclusion that the defendants' conduct in refusing to issue the shares of stock to the plaintiffs was outside the scope of their duties as officers and directors," including facts tending to show that defendants' "decisions were concealed or made at a time, place or manner other than in the course of the business normally transacted by corporate management."). Nor does the SAC's contention that "Blum's interference with Southridge's conversion rights was tortious insofar as Blum sought to prevent Southridge from acquiring any equity interest in . . . [PotNetwork], and the resulting dilution of equity interests (direct or indirect) of certain other parties, including Vacarro," (SAC ¶ 120), reflect anything but a conclusory statement of Blum's alleged motive. *See Metcoff*, 123 Conn. App. at 523 (finding tortious interference claim deficient where plaintiffs "ascribed sinister motivations to conduct taken in the normal course of corporate management" but did not support their "[c]onclusory allegations of improper motivation" with "well pleaded facts to support them"). In short, because the SAC fails to provide any particularized allegations to support Plaintiff's contention that Blum acted for personal gain or was without authority to cause PotNetwork to reject the Second Conversion Notice, the Defendant's motion as to Count Eight is granted and Count Eight is dismissed.

### Defendant Vacarro

With respect to Vacarro, as an initial matter, the fact that Vacarro was a shareholder and not an officer of PotNetwork does not preclude application of the general rule that an entity cannot interfere with its own contract.[9] In *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2d Cir. 1995), the Second Circuit, applying Connecticut law, confronted this issue in the

---

[9] As noted previously, Vacarro was also at all relevant times the President and CEO of SND, a party to the STA. (Vacarro Decl. ¶ 1.) However, the tortious interference claim and the parties' arguments focus solely on Vacarro's role vis-à-vis PotNetwork.

context of a parent company charged with interfering with a contract entered into by its subsidiary and concluded that "[b]ecause there is a significant unity of interest between a corporation and its sole shareholder—indeed, an even greater unity than that which exists between a corporation and its agents or officers—we do not believe that such a shareholder can be considered a third party capable of 'interfering' with its own company's contracts." However, the court noted that an exception might lie where the plaintiff could "prove 'some improper motive or improper means.'" *Id.* at 1037 (quoting *Blake v. Levy*, 191 Conn. 257, 262, 464 A.2d 52, 55 (1983)). Courts have subsequently recognized both this rule and its exception. *See Grey Mountain Partners, LLC v. Insurity, Inc*., 2017 WL 5706830, at *5–*6 (Conn. Sup. Ct. Oct. 18, 2017) (holding that plaintiff failed to create a triable issue as to improper motive absent indication that the alleged tortfeasor's motive was "divergent from its subsidiary's interests" and likewise failed to create issue of fact as to improper means absent evidence of "conduct . . . in the nature of fraud, misrepresentation, or intimidation"); *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924 (CFD), 2011 WL 1225986, at *23 (D. Conn. Mar. 28, 2011), *modified on reconsideration in part on other grounds*, 2011 WL 4396509 (D. Conn. Sept. 21, 2011) (finding "sufficient evidence to indicate that [sole shareholder] had a substantial personal interest in limiting his financial exposure" so as to create a triable issue as to whether he acted with improper motive in directing certain asset transfers potentially violative of company's contract).

Here, the SAC alleges that Vacarro "owned a significant if not controlling interest" in PotNetwork and that he interfered with Southridge's rights under the STA because he "sought to prevent Southridge from acquiring any equity interest in . . . [PotNetwork], and the resulting dilution of his own interests in that company." (SAC ¶¶ 109, 112.) In support of this contention the SAC alleges that Vacarro "was the driving force behind [PotNetwork's] decision to proceed

with the merger transaction" between PotNetwork and New SND, which was designed to avoid PotNetwork's conversion obligations under the STA and Note 2. (*Id.* ¶¶ 59–60, 66.) Specifically, the SAC alleges that the terms of the merger agreement violated the terms of Note 2, which granted Southridge "the right to convert outstanding principal and interest due under the note to common stock of" PotNetwork (*id.* ¶ 31), and which included certain "anti-dilution" provisions designed to safeguard these rights in the event of a merger. (*Id.* ¶¶ 20, 31.) According to Southridge, the merger violated these conditions because it precluded PotNetwork's convertible debt holders, such as Southridge, from using their unexercised conversion rights to acquire shares of New SND, the surviving corporation in the merger transaction and a wholly-owned subsidiary of New PHI. (*Id.* ¶ 54.) Under the merger's reorganization plan, existing PotNetwork shareholders were to receive automatically shares of New SND on a one-to-one basis, which were then exchanged for shares in New PHI. (*Id.* ¶¶ 55–57.) The SAC alleges that Vacarro retired SND's outstanding interest in Note 2 in exchange for the right to acquire 577,523,089 shares of common stock in New PHI, thereby enabling his own company, SND, to achieve precisely what he sought to prevent Southridge from accomplishing. (*See id.* ¶¶ 48, 62, 65.) According to the SAC, post-merger, Vacarro directed Randall Goulding and SCI to inform Southridge, on behalf of New PHI, that Southridge no longer had any rights with respect to New PHI as a result of the merger and would have to instead look to New SND. (*Id.* ¶ 64.) Although the merger transaction was subsequently unwound, the SAC alleges that PotNetwork has still not tendered the conversion shares to Southridge. (*Id.* ¶ 78.)

Accepting these allegations as true, Southridge has stated a claim for tortious interference with the STA and Note 2 against Vacarro. The SAC plausibly alleges that Vacarro, motivated by a desire to protect his own interest in PotNetwork, and to prevent Southridge from exercising its

conversion rights, designed the merger transaction to serve as a basis for rejecting Southridge's conversion notice. The Defendants' argument that Southridge's Second Conversion Notice violated the 4.99% conversion cap in Note 2 and that PotNetwork was accordingly justified in rejecting it, goes to the merits of the claim, and is not properly resolved at this stage of the proceedings. The Defendants' motion as to Count Seven is denied.

### *Defendant Richard Goulding*

Finally, Defendants seek dismissal of Count Nine which alleges that Richard Goulding (along with Randall Goulding and SCI) aided and abetted Vacarro's and Blum's tortious activities. As was the case with Defendant Blum, Richard Goulding, as PotNetwork's President, was an "agent" of the contracting company and cannot be found liable for tortuously interfering with his own contract (or aiding and abetting other agents' tortious interference) absent facts alleging that he exceeded his authority or acted for personal gain. *See Metcoff*, 123 Conn. App. at 522–23. The SAC is bereft of any such supporting facts and accordingly, the Defendant's motion as to Count Nine is granted and Count Nine is dismissed.

## Conclusion

For the foregoing reasons, the motion for summary judgment is DENIED to the extent that it is premised on the Court's lack of personal jurisdiction over Defendants Gary Blum, Charles Vacarro, Richard Goulding, and New SND, and GRANTED to the extent that it is premised on the lack of personal jurisdiction over Defendants Randall Goulding and SCI. Defendants' motion is DENIED as to Counts Five and Six against PotNetwork, DENIED as to Count Seven against Vacarro, GRANTED as to Count Eight against Blum, and GRANTED as to Count Nine against

Richard Goulding.  The Clerk of the Court is directed to terminate Gary Blum, Richard Goulding,

Randall Goulding, and SCI as Defendants in this matter.

      **SO ORDERED** at Bridgeport, Connecticut, this 19th day of December 2019.


                        */s/ Kari A. Dooley*
                        KARI A. DOOLEY
                        UNITED STATES DISTRICT JUDGE